IAN LOVESETH (SBN 85780)
819 Eddy Street
San Francisco, CA 94102
Telephone: (415) 771-6174
Facsimile: (415) 474-3748
For Defendant EDWARD SULLIVAN

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA;<br><br>             Plaintiff,<br><br>     vs.<br><br>EDWARD LEE SULLIVAN;<br><br>             Defendant. | CASE NO. CR 09-00167 DLJ<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR EVIDENTIARY HEARING**<br><br>Date:        October 29, 2010<br>Courtroom: 1, 4th Floor<br>Time:        9:00<br>Judge:       D. Lowell Jensen |

# NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR EVIDENTIARY HEARING

PLEASE TAKE NOTICE that on October 29, 2010 at 9:00, the defendant will move for an order suppressing all evidence obtained as a result of the unlawful search warrant that issued in this case.

Edward Sullivan, by and through his counsel, pursuant to the Fourth Amendment to the Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, hereby moves this Court to enter an Order suppressing all evidence and fruits of evidence that resulted from the government's search of defendant's seized possessions, and grant an evidentiary hearing. This Motion is based on the memorandum of points and authorities and exhibits served and filed herewith, on such supplemental declarations, affidavits, memorandum of points and authorities as may hereafter be filed with the court, on all papers and records on file in this action, and on such oral and documentary evidence as may be presented at the hearing on the motion.

DATED: October 1, 2010

                                           By  /s/ Matt Springman
                                                    Matt Springman
                                                    Attorney for Defendant

## I. Introduction

For the Court to admit any evidence arising out of a warrantless seizure of Mr. Sullivan's computer, it would have to ignore the following:

(1) That the Berkeley Police Department (BPD) took 21 days from the date that Mr. Sullivan's parole agent seized his computer and the date it sought a warrant—which is clearly outside the reasonableness standard established by this Court;

(2) That when Mr. Sullivan's parole agent conducted a warrantless seizure of Mr. Sullivan's computer, he was acting at the behest of another law enforcement agency in an attempt to circumvent the warrant requirements of the Fourth Amendment;

(3) That the consent of Mr. Sullivan to search his computer was limited only to a search for representations of the purported victim's age;

(4) That the BPD failed to follow the requirements for computer searches established by *Comprehensive Drug Testing* because they did not forswear the plain view doctrine—a Ninth Circuit requirement designed to safeguard against a fishing expedition by law enforcement;

(5) That the BPD failed to allow the search to be conducted by an independent third party who would be able to segregate and redact any non-responsive material;

(6) That the warrant failed to disclose any of the actual risks that a search of the computer would damage or alter the information contained on the computer—a clear requirement of the *Comprehensive Drug Testing*;

(7) That the warrant application failed to establish any search protocol—required by *Comprehensive*—tailored to prevent discovery of non-responsive information, even though the BPD presumably had the capability to conduct such limited searches.

3
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

(8) That at the time of the parole agent's warrantless search of Mr. Sullivan's car, Mr. Sullivan was already in custody, thereby nullifying the justifications for a warrantless search because Mr. Sullivan was (i) no longer at-large, (ii) was no longer a threat to the community, (iii) and because the parole agent's ordinary interest in promoting rehabilitation through non-incarceration no longer applied.

Any of the above grounds for suppressing the evidence found on Mr. Sullivan's computer would suffice.  Taken together, they form an overwhelming basis for this Court to exclude the evidence

## II. Factual Background

Edward Sullivan is charged with production of child pornography under 18 U.S.C. 2251 and possession of child pornography under 18 U.S.C. 2252(A)(4) arising out of his alleged interactions with a woman named D.T., the alleged the subject of the pornography.

According to the statement of D.T. which is documented in the police report, on March 3, 2008, Sullivan forced D.T. into his automobile at gunpoint while she waited at a bus stop in Berkeley, drove her to an apartment in Emeryville and forced her to engage in prostitution on International Boulevard in Oakland over the course of two weeks.  On March 17, 2008, Oakland Police Officers detained D.T. on the corner of East 15th Street and 17th Avenue in Oakland for suspicion of prostitution. Conducting a routine computer check, the officers discovered she was listed in MUPS as a missing person.  The interaction with the police caught the attention of Sullivan who was near his parked car where he had slept the previous night. Declaration of Matt Springman ISO Motion to Suppress ("Springman Dec."), Ex. A (Berkeley Police Report) at FDO 0074-77, ELS 251-254.  Mr. Sullivan had slept in his car that night because as a registered

4

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

offender under section 290 of Jessica's Law, the only residence available to him, his mother's house, was in a restricted area. Declaration of Edward Sullivan ISO Motion to Suppress ("Sullivan Dec.") at ¶¶1-4 and Ex. A ("Spike in Number of Homeless Sex Offenders," The *Daily Review*, Jan. 11, 2010). Because of the restriction, Mr. Sullivan was registered as a "homeless transient 290 sex offender" and was either forced to stay in his car, or when he was able to get a voucher from his parole agent, at a hotel that was not restricted. *Id*. After detaining D.T., the police then also detained Sullivan on suspicion that Sullivan was D.T.'s pimp, and recorded his identifying information. *Id* at ¶¶4-15. While both were detained, the officers repeatedly asked D.T. if Sullivan was her pimp, which she denied. The officers then released Sullivan and drove D.T. to her mother's house in Berkeley. Springman Dec., Ex A at FDO 0074-77, ELS 251-254.

Once home, D.T. told her mother that she had been forced into prostitution and raped during her two-week absence. Her mother then drove her to Children's Hospital in Oakland, which notified the Oakland Police Department. Later that day, D.T. was interviewed by BPD Officer Gravette and claimed that the man the officers had detained when she was picked up was her kidnapper, pimp and rapist. *Id* at FDO 0076.

Following the interview with D.T., Officer Gravette then ran a computer check and learned that Sullivan was on parole. *Id* at FDO 0075. On learning the allegations against Sullivan, his parole officer, Officer Tran, revoked his parole on March 22, 2008, and arrested him three days later on March 25. Sullivan Dec. at ¶¶16-17. It is unclear exactly how Agent Tran learned of Sullivan's detention by the Oakland Police Department and the later involvement of the Berkeley Police Department, but it is apparent that Officer Tran received information from law enforcement because his charge sheet contains a verbatim recitation of the Berkeley Police

5

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

Report. Springman Dec., Ex. B (Parole Charge Sheet). Upon Sullivan's arrest by several parole agents including Officer Tran, Tran conducted a warrantless search of Sullivan's car and retrieved several items including a laptop computer and a camera, which were turned over to the Berkeley Police as evidence. *Id*., Ex. A. Tran also seized several items of women's clothing and a wig, which Tran released to a woman Sullivan identified as his former girlfriend. Springman Dec., Ex. C (Affidavit and Search Warrant) at ELS 219. The next day, March 26, D.T. identified Sullivan in a photo array as the man she claimed was her pimp. *Id*, Ex. A at FDO 0075.

On April 10, 2008, Detective Kaplan of the Berkeley Police Department interviewed Sullivan. During the interview, Kaplan repeatedly asked Sullivan whether there was any evidence on Sullivan's computer which included any representations by D.T. that she was 18. Following that line of questioning, Sullivan gave his consent to allow the department to search the laptop seized by Tran. *Id*., Ex. C at ELS 219 and Ex. D (Transcript of April 10 interview of Edward Sullivan) at ELS 112-115. Not having a consent form with him, Kaplan hand-wrote a consent form, which Sullivan purportedly signed. *Id*., Ex. E (Consent Form). On April 15 Kaplan also sought and received a search warrant to search Sullivan's laptop and camera. The search of the laptop produced several videos of D.T., including one video showing D.T. performing oral sex on a male. *Id*., Ex. A ( Berkeley Supplemental Police Report) at ELS 221.

That video is the basis for the current charges against Sullivan.

//

//

//

//

6

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

### III. The 21-day Delay Between the Date of the Seizure of Mr. Sullivan's Laptop and Date That the Berkeley Police Department Sought and Received a Warrant is Unreasonable Under the Ninth Circuit's Holding in *United States v. Dass*

*Dass* involved an effort by law enforcement officials to catch marijuana growers on the Island of Hawaii. 849 F.2d 414 (9th Cir.1988). In the operation, agents collected suspicious packages at certain post offices on the Island and subjected the packages to drug-sniffing dogs. If the dog indicated that a package contained marijuana, the officers would detain the package. In one instance, agents detained the packages of four appellees and detained those packages for periods from 7 to 21 days. The question for the Court was whether the delay in seeking the warrant rendered the search unreasonable. The Court rejected the government's theory that the delay was reasonable, holding that otherwise the delay would sanction the officers lack of diligence in seeking the warrant, allow "law enforcement officials [to] obtain search warrants at their leisure[,]…[permit] an unlimited period of seizure without judicial intervention…[and effectively] nullify the seizure portion of the search and seizure clause of the Fourth Amendment." *Dass*, 849 F.2d 414, 415-16.

The *Dass* Court reached their holding by first analyzing the Supreme Court's holding in *United States v. Van Leeuven*, a case which involved a 29-hour seizure of a mailed package containing marijuana. 397 U.S. 249 (1970). In *Leeuven*, the Court found the delay reasonable, in large part because the seizure involved two packages sent to separate destination which caused a delay in contacting the more distant destination. But, while the Court found that the 29-hour delay was reasonable in that case, it made clear that a 29-hour seizure may not be reasonable in all cases: "The rule of our decision certainly is not that first-class mail can be detained 29 hours

7

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

after mailing.  We hold only that on the facts of this case…[that] a 29-hour delay between the mailings and the service of the warrant cannot be said to be 'unreasonable[.]'"

The *Daas* Court also looked at one of its earlier decisions, *United States v. Hillison*, in which the Court upheld a warrantless seizure of nine hours based on the holding of *Van Leeuwen*. 783 F.2d 692, 696 (9th Cir. 1984). However, The *Hillison* Court, citing Van Leeuwen, appeared to establish "an *outer limit* of 29 hours for a finding of reasonableness." *Dass*, 849 F.2d 414, 415 (emphasis added).  The 11th Circuit also recently weighed in on the issue in *United States v. Mitchell* in a case involving a 21-day delay after the seizure of, as here, a computer hard drive. 565 F.3d 1347 (11th Cir. 2009).  The *Mitchell* Court suppressed the evidence after the delay and carved out a special rule applying to the seizure of computers: "Computers are relied upon heavily for personal and business use.  Individuals may store personal letters, emails, family photos, and countless other items of a personal nature…[t]hus, the detention of the hard drive for over three weeks before a warrant was sought constitutes a significant interference with Mitchell's possessory interest." *Id*., at 1350.

Here, the 21-day delay between the seizure of Mr. Sullivan's computer and the time the BPD sought the warrant falls squarely outside the reasonableness standard established by the Ninth Circuit and the Supreme Court, which have held in leading cases that only a 9-hour seizure and a 29-hour seizure (which according to the holding in *Hilson* is the outer limit of reasonableness) are reasonable. The facts here are also specifically on point with the computer exception established by the *Mitchell* Court—which held that a 21-day hold in the context of a computer search was unreasonable.  On that basis, the Court should suppress any evidence taken from Mr. Sullivan's computer.

8

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

**IV. Mr. Sullivan's Parole Agent, by Acting as the "Stalking Horse" of the Berkeley Police Department, Unlawfully Allowed the Department to Circumvent the Warrant Requirements of the Fourth Amendment by Facilitating the Arrest of Mr. Sullivan and by Personally Seizing a Camera and Laptop from Mr. Sullivan's Vehicle**

Under *Samson v. California* a parole agent, *ordinarily*, and in order to "effectively supervise parolees and protect the public from criminal acts by re-offenders[,]" has the authority to conduct warrantless searches of parolees as long as they are not "arbitrary, capricious, or harassing." 547 U.S. 843, 854 (2006). However, a parole agent may not abuse his authority to conduct warrantless searches by colluding with, or acting at the behest of, another law enforcement agency in order to circumvent the warrant requirements of the Fourth Amendment. When a parole agent uses his authority to circumvent the Fourth Amendment in that way, the search is invalid and the fruits of that search must be suppressed. *U.S. v Harper*, 928 F.2d 894, 897 (9th Cir. 1991)("[T]he police may not use a parole officer as a 'stalking horse' to evade the Fourth Amendment's warrant requirement."); *Smith v. Rhat*, 419 F.2d 160 (9th Cir. 1969).

The question here, as it was in *Harper*, "is whether the parole officer used [his] authority to help the police evade the Fourth Amendment's warrant requirement, or whether the parole officer cooperated with the police to achieve his own legitimate objectives." 928 F.2d 894 at 897.

The Ninth Circuit first addressed the issue in *Smith* v. *Rhat*. *Smith* involved a burglary from a department store where Smith's wife worked. Because there did not appear to be any forced entry, the sheriff investigating the case suspected that the burglar used a key to enter the store. The sheriff's suspicions ultimately led to Smith, who had access to his wife's key. But, instead of seeking a warrant to enter Smith's home, the sheriff enlisted the help of Smith's parole officer (whom the sheriff knew could conduct warrantless searches of his parolees), to conduct the search. After a conviction based on the fruits of that search, Smith filed a habeas petition

9
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

seeking to overturn the ruling by the district court admitting the evidence of the search.  The *Smith* Court overturned the district court holding that "a parole officer may not conduct a warrantless search of items in the parolee's possession while acting on the prior request of law enforcement officials and in concert with them. The parole officer is in such a case acting, not as the supervising guardian…but as the agent of the very authority upon whom the requirement for a search warrant is constitutionally imposed. To permit concerted effort among officials…to circumvent Smith's Fourth Amendment rights cannot be done."

The facts of the present case are analogous to *Smith*.  Here, Sullivan's car was searched by Parole Officer Underwood after his arrest in his car by Parole Officer Tran. In the "Charges and Codes" section of Tran's report on the arrest and search of Sullivan's vehicle he lists multiple charges including kidnapping, pimping and pandering, rape, and sodomy.  But nowhere in his report, either in the charges section or in the narrative does Tran mention or refer to any of the counts Mr. Sullivan is now charged with—possession or control of child pornography. Yet, the parole agents seized the only things that could provide evidence of child pornography—a camera and laptop computer—and released to Sullivan's girlfriend competent circumstantial evidence of pimping and pandering—a bag of women's clothing and a wig.  Had Tran actually been investigating Sullivan for a possible parole violation related to prostitution, why did he release the women's clothing and the wig?; and if he was *not* interested in possible child pornography charges, which he apparently was not based on his report, why did he seize the only items which could contain evidence of child pornography?—the camera and the laptop, both of which he immediately released to the BPD.

The only plausible explanation for Tran's seizure of the laptop and camera, and release

10

**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

of the evidence supporting the pimping charges, is that the arrest and subsequent search were at the direction of the BPD and/or the Oakland Police Department after D.T. accused Sullivan of filming her.

In fact, we know that Tran must have had direct contact with the Berkeley Police Department before he arrested Sullivan because Tran's charge sheet includes a verbatim excerpt from the Berkeley police report.

### V. Mr. Sullivan's Purported Consent to Allow a Search of His Computer is Invalid Because (i) It Was Given Following a Warrantless Arrest Unlawfully Facilitated By His Parole Officer; and (ii) Because It Was Insufficiently Specific to Warrant the Comprehensive Forensic Search Done by the Berkeley Police Department

#### a. Mr. Sullivan's Purported Consent Is Invalid Because it Followed an Unlawful Arrest and Seizure

For a consent to be valid, it must be both voluntary and cannot be the result of an unlawful arrest or arise from an unlawful seizure. *Wong Sun v. United States*, 371 U.S. 471,485-86 (1963)(Holding that the exclusionary rule bars from trial physical, tangible materials obtained either during, or as a direct result of an unlawful invasion). And under *Royer*, it is the prosecution's burden to demonstrate that the consent was given under lawful circumstances—"a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983).

In *Royer*, an air traveler was detained on suspicion that he was a drug courier. The police then seized his ID and plane ticket, seized his checked luggage from the airline and led him to a police room for questioning, all without indicating to the suspect that he was free to leave. The detention and seizure ultimately led to the suspect consenting to a search of his luggage. During the search the police found marijuana. The Supreme Court, however, ultimately deemed the marijuana evidence inadmissible, holding that     although the officer's reasonable suspicion that

11
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

the suspect was a drug courier was valid, the combination of the officer's seizure of the suspect's ID, plane ticket and luggage, while forcing the suspect to move to another room, constituted an illegal seizure; and that because the seizure was unlawful, the consent was necessarily invalid. 460 U.S. 491 at 501-08.

Here, the consent by Sullivan to allow the BPD to conduct a warrantless search is similarly invalid because that consent was given following an unlawful arrest and seizure conducted by Sullivan's parole agent in concert with, and at the behest of the Berkeley Police Department.

    **b. Mr. Sullivan's Purported Consent to Allow a Search of His Computer is Invalid Because Sullivan Was Repeatedly Told that the *Only* Purpose of the Search Was to Determine the Age of D.T. In Fact, Sullivan Never Told the Interviewer that the Computer Contained Evidence of D.T.'s Age, Rather He Told Him That the Best Way to Determine the Representations D.T. Made About Her Age Would be to Talk to the People that D.T. Interacted With**

After taking a statement from D.T. in which she accuses Sullivan of filming her, the BPD conducted an interview of Mr. Sullivan while he was in custody. During the interview, the interviewer made clear that the purpose of any search of Sullivan's computer would be to determine whether D.T. represented that she was 18:

> Q: …if you got her on tape on your computer, sayin' that she's 18
> A: —Mm hm?
> Q:—does that hurt you or help you?
> A: That helps me.
> Q: You're goddamn right that helps you.
>
>             \*       \*
>
> Q: We ain't try to fuck your eyes out. If it's a humbug [if D.T. represented that she was 18], we gotta treat it as a humbug. We ain't trying to send you to the penitentiary on a fuckin' humbug. I'd rather not waste my time if it's a humbug, and move on to something else.
>
>             \*       \*

> Q: If you got video—I'm sayin', if you got video with her sayin' that she's 18, we'll find that right?

Springman Dec., Ex. D at ELS 112-115

It was in the context of that line of questioning that Sullivan gave his consent to search the computer. In fact, Sullivan never told the interviewer that D.T. ever represented that she was 18 on any video. Instead, Sullivan repeatedly told the interviewer that the best way to determine whether D.T. represented that she was 18 was to talk to the people she interacted with:

> A: You know what? The bottom line is, it shouldn't be from the computer that you get this stuff from [representations by D.T. that she was 18]. It should be from people that she talked to—interacted with me and her.
>
> *    *
>
> A: (Inaudible)…it shouldn't be from the computer that you get this stuff from. It should be from people that you talk to…interact wit' me and her. Call Kimberlia up and ask her.
>
> *    *
>
> A: Hold on. Listen what I'm sayin': You call Kimberlia up—
> Q:—Okay.
> A: —and ask her if she misrepresented herself that she was 18, about to be 19. She was an adult. She told us that.

*Id*.

It is apparent that Sullivan's oral consent, "Look in the computer. I give you consent" is specifically in response to Kaplan's suggestion that he was interested only in exculpatory evidence about D.T.'s age. *Id* at 115:17-36. And the hand-written consent form, while ostensibly authorizing a search through all files, hard drives and all information contained on his computer and camera, must be considered in the context of the line of questioning immediately preceding the consent. That questioning was specifically related only to evidence of D.T.'s representations about her age. *Id*. And, given the limited consent, the search, as discussed in detail below, should have been conducted without the benefit of the plain view doctrine or conducted by an

13
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

independent third party to screen material unrelated to representations about D.T.'s age.  *U.S Comprehensive Drug Testing*, 579 F. 3d 989, 998 (9th Cir. 2009).

### VI. The Warrant Used to Search Sullivan's Computer Did Not Meet the Fourth Amendment Standard for Computer Searches as Articulated in *United States v Comprehensive Drug Testing*

The Court in *Comprehensive Drug Testing* established several criteria that a search warrant authorizing the search of computer files must contain.  Here, the warrant did not meet any of those criteria.

#### a. Magistrates Should Insist that the Government Waive Reliance Upon the Plain View Doctrine or Require that the Material be Reviewed by a Independent, Third-Party

In *Comprehensive Drug Testing*, Judge Kozinski explained the dilemma the Court faces when applying the traditional plain view doctrine to the relatively new phenomenon of digital and electronic searches: "If the government can't be sure whether data may be concealed, compressed, erased or booby trapped without carefully examining the contents of every file…then everything the government chooses to seize will, under this theory, automatically come into plain view.  Since the government agents ultimately decide how much to actually take, this will create a powerful incentive for them seize more rather than less...[and promote] a [l]et's take everything back to the lab and see what we might stumble upon" approach to electronic searches. 579 F.3d 989, 998 (2009)(citing *United States v.Tamura*, 694 F.2d 591, 595-57 (9th Cir. 1982)(Holding, in the pre-digital search era, that "[i]n the comparatively rare instances where documents are so intermingled that they cannot feasibly be sorted on site,…the Government [should] seal[] and hold[] the documents pending approval by a magistrate of a further search[.]")

14
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

Judge Kozinski rejected that approach as violative of the Fourth Amendment, and established the requirement that in cases of warrants seeking electronic searches that the "government should forswear reliance on the plain view doctrine which would allow it to retain data…only because it was required to segregate seizable from non-seizable material." In the event that the government refuses to forswear the plain view doctrine, the magistrate judge should order that the material be reviewed by an independent third-party under court supervision, or deny the warrant altogether. *Comprehensive*, 579 F.3d at 998.

In this case, the government neither agreed to forswear reliance on the plain view doctrine when it searched Mr. Sullivan's digital files, nor allowed an independent, third party to review the material. Under *Comprehensive Drug Testing*, the search conducted by the government in this case was unlawful. The Court should suppress any material extracted from Mr. Sullivan's computer on that basis alone.

### b. The Warrant Application Must Disclose the *Actual* Risks of Destruction of Information

*Comprehensive* also requires that the warrant application must not only acquaint the magistrate with the theoretical risks of concealment and destruction of evidence, but also the "*actual* degree of such risks in the case presented to the judicial officer." *Id* at 998.

Here, the application for the warrant did not advise the magistrate of any theoretical risk of damage to the information, let alone the *actual* degree of such risks. On that the basis, the warrant is unlawful and the Court should suppress any evidence taken from it.

//

//

//

15
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

### c. The Search Protocol Must be Tailored to Uncover Only the Information that is the Subject of the Warrant

Judge Kozinski also makes clear that the protocol for searching electronic data must not allow for a fishing expedition: "The process of sorting, segregating, decoding and otherwise separating seizable data from other data must be designed to achieve that purpose and that purpose only." He provides a hypothetical: "if the government is allowed to seize information pertaining to ten names, the search must be designed to discover data pertaining to those names only, not to others…For example, the government has sophisticated hashing tools at its disposal that allow the identification of well-known illegal files (such as child pornography) without actually opening the files themselves." *Id*.

Here, the Court need not address whether the search protocol provided to the magistrate was narrowly tailored because the government provided no search protocol *at all*. Instead, the scope of the search was so hopelessly overbroad that it allowed a search with no apparent limits, including searches for the names and addresses of persons unconnected to the case. For example, the scope of the search encompassed, (i) the names, addresses and phone numbers of "persons who have similar sexual interest," (ii) any names, addresses or phone numbers which would tend to identify *any* juvenile." And it also allowed the searching officer to look at every file with no restrictions, even when it was apparent that certain areas of the computer could not contain any evidence of sexually explicit materials, including calendars, address books, calculators, and email and chat logs.

//
//
//

16
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

**VII.    At the Time Officer Tran Seized Mr. Sullivan's Camera and Laptop, Mr. Sullivan had Already Been Arrested.  Therefore, the Ordinary Justifications For a Warrantless Search of a Parolee No Longer Applied, i.e. Mr. Sullivan Was No Longer "At-Large," the Seizure Was Not Necessary to Protect the Community, and the Seizure was Not Necessary to "Assure the [Parolee's]...Period of Genuine Rehabilitation."  The Warrantless Seizure of Sullivan's Camera and Laptop was Thus Unlawful.**

In *Motley v. Parks*, the Ninth Circuit articulated its justification for warrantless searches by parole officers: "the purpose of allowing parole searches without a warrant is 'to assure that the [parolee] serves a period of genuine rehabilitation and that the community is not harmed by the [parolee's] being at large.' When the parolee is no longer 'at large' and the search no longer affects his interests, both of these justifications are absent." 383 F.3d 1058 (9th Cir. 2004)(*citing*, *Griffin v. Wisconsin,* 483 U.S. 868, 875 (1987)).

*Motley* involved a search of a suspect's purported former residence while the suspect was already in custody for several weeks.  Given that the termination of the defendant's parole had been revoked, the Court held that the justifications for a warrantless search by a parole officer were no longer applicable.

Here, while the time between the arrest of Sullivan and the search of his car was much shorter, the holding of *Motley* is still applicable because Sullivan was no longer at-large, was not a threat to the community, and because Sullivan was in custody, the parole agent's ordinary interest in promoting rehabilitation through non-incarceration no longer applied, i.e. the traditional warrant requirements of the Fourth Amendment were in place at the time Officer Tran searched Sullivan's car.  Because the warrant requirement was applicable at the time of the search, the Court should suppress any fruits of that search.

17
**Defendant's Motion to Suppress Evidence and Request For Evidentiary Hearing**

## VIII. Conclusion

For the above stated reasons, the Court should suppress any evidence found on Mr. Sullivan's computer.

DATED: October 1, 2010

                                                      By   */s/ Ian Loveseth*
                                                                Ian Loveseth
                                                                Attorney for Defendant