MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Acting Chief, Criminal Division

ANDREW S. HUANG (CABN 193730)
Assistant United States Attorney
  1301 Clay Street, Suite 340S
  Oakland, CA 94612
  Telephone: (510) 637-3680
  Fax: (510) 637-3724
  E-Mail: andrew.huang@usdoj.gov

ALECIA RIEWERTS WOLAK (NYBN 4012241)
Trial Attorney
Criminal Division, Child Exploitation and Obscenity Section
U.S. Department of Justice
  1400 New York Avenue, NW, Suite 600
  Washington, DC 20530
  Telephone: (202) 353-3749
  Fax: (202) 514-1793
  E-Mail: Alecia.Riewerts@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 09-00167 DLJ |
| Plaintiff, | UNITED STATES'S OPPOSITION TO THE DEFENDANT'S MOTION TO SUPPRESS EVIDENCE |
| v. | |
| EDWARD LEE SULLIVAN, a/k/a "Three Stacks, | Date: October 29, 2010 Time: 9:00 a.m. |
| Defendant. | |

TABLE OF CONTENTS

I. INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. ANALYSIS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A. Defendant's property was lawfully subject to suspicionless, warrantless searches and seizures by virtue of his status as a parolee... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B. The parole agency was not acting as a "stalking horse" for BPD. . . . . . . . . . . . . . . . . . 4

    C. BPD officers lawfully searched the defendant's laptop and camera pursuant to the defendant's valid consent.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    D. BPD officers also searched the seized evidence, including the defendant's laptop and camera, pursuant to a valid search warrant.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        1. The 21-day lapse between seizure and issuance of a search warrant does not render the search unreasonable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2. The since-superseded 2009 opinion in *United States v. Comprehensive Drug Testing* has no bearing on the search warrant issued by the state Superior Court on April 15, 2008.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Florida v. Jimeno*, 500 U.S. 248 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Georgia v. Randolph*, 547 U.S. 103 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Griffin v. Wisconsin*, 483 U.S. 868 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Latta v. Fitzharris*, 521 F.2d 246 (9th Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Motley v. Parks*, 383 F.3d 1058 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Samson v. California*, 547 U.S. 843 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Burgess*, 576 F.3d 1078 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Comprehensive Drug Testing*, 579 F.3d 989 (9th Cir. 2009). . . . . . . . 10, 13, 14

*United States v. Comprehensive Drug Testing*, _F.3d_(9th Cir. 2010). . . . . . . . . . . . . . . . . . . 13

*United States v. Dally*, 606 F.2d 861 (9th Cir. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Dass*, 849 F.2d 414 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Gutierrez-Mederos*, 965 F.2d 800 (9th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Harper*, 928 F.2d 894 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Jarrad*, 754 F.2d 1451 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Knights*, 534 U.S. 112 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*United States v. Richardson*, 849 F.2d 439 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## STATE CASES

*United States v. Murinko*, 2010 WL 3521964 (9th Cir., Sept. 10, 2010) (Attachment 1). . . . 12, 13

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 2251. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Federal Rules of Criminal Procedure Rule 41. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

//

**STATE STATUTES**

Cal. Penal Code § 3067(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## I. INTRODUCTION

COMES NOW, the United States of America in opposition to the Defendant's Motion to Suppress Evidence that was seized during a parole search on March 25, 2010 and the digital evidence that was subsequently searched pursuant to a search warrant issued by a state court on April 15, 2008.  (Defense counsel was contacted in advance and agreed that they had no objection to the late filing of this Opposition.)  Suppression is not warranted because (1) parole agents seized the evidence pursuant to a lawful parole search; (2) the defendant consented to subsequent searches of his laptop computer (the "laptop") and digital camera (the "camera"); and (3) the Berkeley Police Department ("BPD") officers' search of the laptop and camera was conducted pursuant to a lawful search warrant.  This Opposition is supported by the following Points and Authorities, the Declarations of Parole Agent Nghia Tran ("Tran Decl.") and BPD Officer Timothy Kaplan ("Kaplan Decl.") filed contemporaneously herewith in support of this Opposition, evidence submitted by the defendant, and, if necessary, any evidence and arguments of counsel submitted at a hearing on the Motion.

## II. FACTUAL BACKGROUND

A federal grand jury indicted defendant Edward Lee Sullivan on one count of producing child pornography and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252(a)(4)(B), respectively, based on his conduct in March 2008.  The defendant is a convicted child sex offender, convicted in California state court of unlawful sex with a minor, prostitution of a minor under 16 years of age, and pandering of a minor under 16 years of age.  *See* Tran Decl. at ¶ 3.  In fact, when the defendant committed the offenses charged in the present case in March 2008, the defendant was on parole from serving his sentences for those offenses.  *See id.* The defendant's crimes rendered him a "High Control Parolee" and he was subject to numerous conditions of parole, both standard and special conditions.  *See id.* at ¶¶ 4, 5.  The standard form Notice and Conditions of Parole included a search condition: "You

and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." *See id.* at Attach. 1. The Special Conditions included the following:

- You shall not have contact with females between the ages of 14 and 18 years. "No contact" means exactly that. No contact in any form, whether direct or indirect, personally, by telephone, letter, electronic, computer, or through another person.
- You shall not view, possess or have access to videotapes, films, magazines or photographs depicting any type of sexual activity or sexually oriented material.
- Any computer or mobile telecommunications device under your control, or which you have access, is subject to search and seizure by your Parole Agent.
- You shall contact your parole agent within 24 hours of any type of Law Enforcement contact (traffic stop, identification check, suspect, witness, etc.).

Tran Decl. at Attach. 2.

D.T., the victim in this case, was 14 years old at the time of the charged offenses in March 2008. *See id.* at ¶ 7. As reported by the victim to BPD officers, the defendant pimped D.T. for several weeks in March 2008. During this period, the defendant also made at least one sexually explicit video of the victim performing oral sex on him. By the defendant's own admission, he had already made her acquaintance before March 17, 2008, when both he and D.T. were stopped by Oakland Police Department ("OPD") officers. *See* Def.'s Decl. at ¶¶ 4-7. Notwithstanding the defendant's claims to the contrary, the defendant did not report this contact with OPD to his parole agent. *See* Tran Decl. at ¶ 8. Instead, on March 24, 2008, D.T.'s mother reported to a parole agent that, *inter alia*, the defendant had been pimping her daughter. *See id.* at ¶ 7.

Parole agents eventually arrested the defendant on March 25, 2008, for parole violations. *See id.* at ¶ 9. At the time of the defendant's arrest, parole agents conducted a parole search of the defendant's vehicle and recovered several items, including a laptop computer, a digital camera, a book about pimping, and a cellular telephone, that had potential evidentiary value for any parole revocation proceedings involving the defendant. *See id.* at ¶ 10. To the best of the government's knowledge, the parole agency had no contact with other law enforcement agencies prior to the defendant's arrest and parole

No. CR 09-00167
U.S.'S OPP. DEF.'S MOT. SUPPRESS                          2

search. *See id.* at ¶ 11.

BPD eventually took custody of evidence seized during the parole search, including the defendant's laptop and camera. *See id.* at ¶ 15. On April 10, 2010, the defendant was interviewed by BPD officers at Santa Rita Jail. *See* Declaration of Mattheww Springman in Support of the Defendant's Motion to Suppress ("Springman Decl.") at Exh. C at FDO 0104. During the course of this interview, the defendant executed a handwritten consent agreement that gave BPD officers "permission to search through all files, hard drives and all information contained on my computer . . . . I also give consent to search my camera." *See id.* at Exh. E.

BPD officer Tim Kaplan also sought and obtained a search warrant from the Superior Court, County of Alameda, on April 15, 2008 to search, *inter alia*, the defendant's laptop and camera. See *id.* at Exh. C. BPD computer forensic investigators searched the evidence and recovered videos depicting the victim, including one where the victim appears to be performing oral sex on the photographer, who can be heard commenting throughout the video and whom at least one witness has identified (by voice recognition) as the defendant. See *id.* at Exh. A.

### III. ANALYSIS

**A. Defendant's property was lawfully subject to suspicionless, warrantless searches and seizures by virtue of his status as a parolee.**

A warrant was not required for the search and seizure of the defendant's property, including evidence contained in his laptop and camera, due to his parole status. As noted above, the defendant was on notice that his "residence and any property under [his] control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer." See Tran Decl. at Attach. 1. More specifically, the defendant, as a Special Condition of his parole, acknowledged that any computer under his control was subject to search and seizure by his parole agent. See *id.* at Attach. 2. The Supreme Court has held that "the Fourth Amendment does not prohibit a police

1  officer from conducting a suspicionless search of a parolee." *Samson v. California*, 547
2  U.S. 843, 857 (2006). Parolees "have severely diminished expectations of privacy by
3  virtue of their [parole] status alone." *See id.* at 852. In *Samson*, the Court considered the
4  exact California law, Cal. Penal Code § 3067(a) (requiring parolees to agree "to be
5  subject to search or seizure by a parole officer or other peace officer . . . with or without a
6  search warrant with or without cause") that gives rise to the search conditions in the
7  present case. Employing a totality of the circumstances approach, the Court considered
8  the government's interests in supervising parolees and the government's interest in
9  reducing recidivism and concluded that parolees have a diminished expectation of
10 privacy, as "a State's interests in reducing recidivism and thereby promoting reintegration
11 and positive citizenship among probationers and parolees warrant privacy intrusions that
12 would not otherwise be tolerated under the Fourth Amendment." *See id.* at 852-53 (citing
13 *Griffin v. Wisconsin*, 483 U.S. 868, 879 (1987); *United States v. Knights*, 534 U.S. 112,
14 121 (2001)).

15       Additional facts concerning the search in *Samson* are worth comparing to the
16 present case. In *Samson*, the parolee was stopped by a police officer whose only basis for
17 searching the parolee was the parolee's parole status. *See id.* at 846-47. This entirely
18 suspicionless search and the subsequent seizure of a controlled substance by the police
19 officer was upheld by the Court. Though not necessary under *Samson*, the search in this
20 case was conducted by parole agents and, again, though not necessary to pass
21 constitutional muster, the victim's mother provided parole agents with at least reasonable
22 suspicion to conduct such a search. Given the Court's holding in *Samson*, suppression is
23 not warranted for any evidence recovered from the defendant, including evidence found
24 on his laptop and camera, because all of his property was subject to warrantless searches
25 and seizures by virtue of his parole status.

26      **B.**    **The parole agency was not acting as a "stalking horse" for BPD.**
27       The defendant attempts to undermine the validity of the parole search and seizure
28 by arguing that the parole agency was acting as a "stalking horse" for BPD, allowing BPD

1  to circumvent the Fourth Amendment's warrant requirement.  "[T]he police may not use a
2  parole officer as a 'stalking horse' to evade the fourth amendment's warrant requirement."
3  *United States v. Harper*, 928 F.2d 894, 897 (9th Cir. 1991) (citing, *inter alia*, *United*
4  *States v. Richardson*, 849 F.2d 439, 441 (9th Cir. 1988)).  The Ninth Circuit in *Harper*,
5  however, also noted that "police and parole officers are entitled to work together to
6  achieve their objectives; concerted action does not in and of itself make a search
7  constitutionally infirm."  *Id.* (citing *United States v. Jarrad*, 754 F.2d 1451, 1454 (9th Cir.
8  1985)).  Because parole agents in the present case pursued legitimate parole objectives,
9  independent of criminal proceedings, the defendant's stalking horse argument is not
10  sustainable.
11       In *Harper*, the Ninth Circuit denied a stalking horse claim where "the parole
12  officer cooperated with the police in pursuit of legitimate parole objectives." *See id.*  The
13  court reasoned that the parole officer took action because the parolee had "violated the
14  terms of his parole, not because the police asked her to" and noted that the parole officer
15  had already taken action prior to any contact with the police.  *See id.*  Likewise, at the
16  outset of the present case, parole agents and police officers were far from coordinated.
17  Though the defendant was initially accosted by OPD officers on March 17, 2008, parole
18  agents arrested the defendant and effected a parole search and seizure of evidence on
19  March 25, 2008, prior to any contact with the police regarding the defendant.  See Tran
20  Decl. at ¶ 11.  By all indications, the parole agency learned of the defendant's exploitation
21  of D.T. through a report by D.T.'s mother on March 24, 2008, not a police agency.  *See*
22  *id.* at ¶ 7 and Attach. 3.  As in *Harper*, the parole agents here acted because they
23  suspected the defendant had violated the conditions of his parole and seized items that
24  were believed to have evidentiary value for parole proceedings.  *See* Tran Decl. at ¶¶ 10,
25  12.  The parole agent of record ultimately charged the defendant with eight (8) separate
26  violations of parole conditions in his Violation Report.  *See id.* at Attach. 4.
27       Rather than stalking horse conduct, the nature of the defendant's parole charges
28  indicate the pursuit of legitimate parole objectives; several, such as pimping and

1   pandering and oral copulation of a minor, may be similar to criminal offenses, but others
2   such as possession of sexually oriented material (depicting adults) and absconding appear
3   to be pure parole violations. *See id.* Even more telling, parole revocation proceedings
4   were instituted against the defendant and he eventually resolved the charges through
5   "Optional Waiver," which is a deferral of his right to a revocation hearing coupled with
6   his election to serve twelve (12) months custody for his *parole* violations, pending
7   resolution of his criminal charges. *See id.* at ¶ 17.

8       The subsequent cooperation between the parole agency and BPD to analyze the
9   digital media (specifically, the laptop and camera) seized from the defendant is also
10  permissible because searches of these items served the legitimate parole objective of
11  seeking evidence of the defendant's parole violations. The digital evidence contains
12  evidence that could have supported the parole charges, which could have been crucial
13  because the defendant could have withdrawn his Optional Waiver at any time during his
14  twelve month custodial term and contested revocation. *See id.* at ¶¶ 14, 15, 17. The
15  defendant's claim that the parole agent only seized the laptop and camera at the behest of
16  BPD for evidence of the production of child pornography, *see* Def.'s Mot. at 10-11, is
17  flawed in two ways. First, the parole agents did not simply seize the evidence and then
18  cease any parole proceedings. As evidenced by the Violation Report, the parole agent
19  charged the defendant with parole violations, such as pimping and pandering, which
20  could have been supported by evidence recovered from the digital evidence. Secondly, it
21  was not known by the parole agent at the time of the March 25, 2008 parole search that
22  child pornography videos involving the victim existed. Tran Decl. at ¶ 13.

23      The defendant also argues that the parole agents' search and seizure of his laptop
24  computer and camera are inconsistent with legitimate parole objectives, as the defendant
25  was no longer "at large." Def's Mot. at 17. The restrictions placed on individuals who
26  continue to be monitored by the criminal justice system after their release from
27  incarceration "are meant to assure that the probation serves as a period of genuine
28  rehabilitation and that the community is not harmed by the probationer's being at large."

1  *See Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987).  It is illogical to argue there is no
2  further governmental interest in determining the full scope of the violation of parole
3  conditions once a defendant violates his parole conditions and/or commits a new crime.
4  Investigating to what extent the parolee has violated his parole conditions is vital to
5  determining the appropriate course of action with regard to the parolee.

6        The Defendant's argument is misdirected for two additional reasons.  First, the
7  present case is distinguishable from the principal caselaw cited, *Motley v. Parks*, 383 F.3d
8  1058, 1064 (9th Cir. 2004), *vac'd by* 432 F.3d 1072 (9th Cir. 2005) (en banc).  *Motley*
9  involved a parole search at the parolee's former address, performed one and one half
10 months after the parolee had been arrested and taken into uninterrupted custody.  Here,
11 the defendant and his property was searched on the same day as his arrest.  *See* Tran Decl.
12 at ¶ 10.  (Even if the facts in *Motley* were analogous to the present case, the panel opinion
13 cited by the defendant was superseded by an en banc decision.  *See Motley v. Parks*, 432
14 F.3d 1072, 1075-1076 (9th Cir. 2005) (en banc).)  Moreover, *Motley* addressed the
15 qualified immunity of law enforcement officers in a civil action brought pursuant to 42
16 U.S.C. § 1983, and did not squarely address the standards for the suppression of evidence
17 for an alleged Fourth Amendment violation in the context of a criminal prosecution.

18       The Ninth Circuit has previously addressed whether the subsequent search of a
19 parolee's home was lawful after the parolee was subject to arrest.  In *Latta v. Fitzharris*,
20 521 F.2d 246, 252 (9th Cir. 1975), the court found that the search was legal, as the
21 "parole officer's interest in inspecting [a parolee's] place of residence did not terminate
22 upon his arrest; if anything it intensified."   Taking the parolee into custody was not the
23 end of the parole authorities' responsibilities; they also "need to know the number and
24 seriousness of all violations, as well as other current information about the parolee's
25 progress."  *See id.; see also United States v. Dally*, 606 F.2d 861, 863 (9th Cir. 1979).

26       In searching and seizing the Defendant's property subsequent to the Defendant's
27 parole arrest, Parole Agent Tran's actions were consistent with valid parole objectives.
28 The parole agents received information that the defendant, who had previously been

No. CR 09-00167
U.S.'S OPP. DEF.'S MOT. SUPPRESS      7

convicted for sexually exploiting a child, had, *inter alia*, raped and pimped yet another child.  The actions of the parole agents upon learning that information were consistent with performing their critical role in securing the safety of the community.  The parole agents not only arrested the defendant for violating the conditions of the Defendant's parole on March 25, 2008, but also ensured that evidence was secured which would provide an additional basis for proving the parole violations had occurred.  If Parole Agent Tran had not seized this evidence, which could shed light on the extent to which the Defendant had violated parole, he would not have put himself in a position to make a determination as to what extent the defendant could be rehabilitated and what measures were necessary to safeguard the community from the defendant.

      **C.**      **BPD officers lawfully searched the defendant's laptop and camera pursuant to the defendant's valid consent.**

In addition to the defendant's parole condition as a basis for searching within the evidence seized on March 25, 2008, the defendant also provided BPD officers with consent to perform such a search.  A well-established exception to the Fourth Amendment's presumptive warrant requirement is the voluntary consent search.  *See Georgia v. Randolph*, 547 U.S. 103, 1091520 (2006); *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973).  As an initial matter, the defendant argues, without more, that his consent was not valid because it followed "an unlawful arrest and seizure conducted by Sullivan's parole agent in concert with, and at the behest of the Berkeley Police Department." *See* Def.'s Mot. at 11-12.  At no point in his Motion does the defendant contest the voluntariness of his consent; he does not allege coercion.  As noted above, the defendant was arrested by parole agents subsequent to a complaint lodged by the victim's mother, without direction by BPD.  *See* Tran Decl. at ¶¶ 7, 11.  On March 25, 2008, the Board of Parole Hearings issued a "Miscellaneous Decision," which functioned as a parole arrest warrant and specified the basis for recommending the warrant; the defendant was arrested pursuant to that Miscellaneous Decision.  *See id.* at ¶ 7 and Attach. 3.  As noted above, notwithstanding any subsequent cooperation between parole agents and the

1  police, the parole arrest concerned potential parole violations.  The defendant has failed to
2  assert any facts that undermine the legality of his parole arrest and, therefore, his consent
3  to search his laptop and camera is free of taint.
4       The defendant also claims that his consent was limited in nature: he only gave
5  BPD officers permission to search his laptop, camera, and storage devices for the limited
6  purpose of finding evidence about victim D.T.'s representations about her age.  In
7  measuring the scope of consent, the Ninth Circuit assesses "what a reasonable person
8  would have understood by the exchange between him and [law enforcement]." *United*
9  *States v. Gutierrez-Mederos*, 965 F.2d 800, 803 (9th Cir. 1992) (citing *Florida v. Jimeno*,
10 500 U.S. 248, 251 (1991)).  "The scope of a search generally is defined by its expressed
11 object."  *See id.*  In *Gutierrez-Mederos*, the court upheld a warrantless search where an
12 officer sought consent to search for weapons and narcotics and the defendant indicated
13 "go ahead" with "no explicit limit on the scope of that search." *See id.* at 803-04.  The
14 court rejected the claim that the officer exceeded the scope of consent, reasoning that the
15 defendant's general consent allowed the officer to search "any container within the car
16 that reasonably could contain contraband."  *See id.*
17      The facts in this case similarly belie the defendant's claim of limited consent.
18 During his interview at the Santa Rita Jail on April 10, 2008, the defendant gave his
19 unambiguous, broad consent to BPD officers "too search through *all* files, hard drives and
20 all information contained on my computer . . . . I also give consent to search my camera."
21 *See* Springman Decl. at Exh. E.  Though he was in custody, the defendant appeared to
22 give his consent freely, without coercion.  *See id.* ("I give this permission and consent
23 freely.  I was not coerced"); *see also* Kaplan Decl. at Attach. 2 (transcript of defendant's
24 interview).  BPD officers advised the defendant of his rights at the outset of the interview.
25 *See id.* at Attach. 1 (BPD Admonition and Waiver form executed by the defendant) and
26 Attach. 2 at ELS-81 to ELS-83.  He acknowledged his understanding of those rights and
27 agreed to speak with the BPD officers.  *See id.*  It was the defendant that initiated
28 discussion about his laptop and the possibility that it contained pertinent evidence.  *See id.*

No. CR 09-00167
U.S.'S OPP. DEF.'S MOT. SUPPRESS            9

at ELS-92. Contrary to claims made in his Motion that the discussion during the interview about the laptop only concerned an interview where D.T. stated she was 18 years old, the defendant, at various times, referred to the laptop as containing "several" or "couple" of "entries" concerning D.T., discussion about whether there is a video on the computer of the victim having sex with other males, an admission by the defendant that he assisted the victim place an ad on an "adult social website" called "Redbook," and discussion about whether the defendant took naked pictures of the victim. *See*, *e.g., id.* at ELS-92, ELS-119 to ELS-121. Furthermore, the defendant made this unqualified statement during his interview: "Look in the computer. I give you consent." *See id.* at ELS-115. This statement was made shortly after the interviewer asks "Now, if there's other stuff . . . if there's other stuff–," which further undermines the defendant's claim of limited consent. Given both the broad, unambiguous language of his written consent and the context with which he gave verbal consent, a reasonable person could not infer any limit on the scope of the defendant's consent.

       **D.**     **BPD officers also searched the seized evidence, including the defendant's laptop and camera, pursuant to a valid search warrant.**

In addition to authority under the defendant's parole conditions and the consent obtained from the defendant to search his laptop and camera, BPD officers searched evidence seized during the March 25, 2008 parole arrest under a search warrant issued by the Superior Court, County of Alameda. *See* Springman Decl. at Exh. C (affidavit and search warrant issued on April 15, 2008). The defendant challenges the validity of the search warrant on two grounds: (1) that the 21-day period between seizure of the evidence and issuance of the warrant is unreasonable; and (2) that the warrant was issued in violation of requirements enunciated in *United States v. Comprehensive Drug Testing*, 579 F.3d 989 (9th Cir. 2009). Because neither argument forms a legal basis for invalidating the search warrant and the consequent search, suppression of evidence is not merited.

**1.     The 21-day lapse between seizure and issuance of a search warrant does not render the search unreasonable.**

The 21-day delay between seizure of evidence from the defendant and BPD's April 15, 2008 request for a search warrant did not result in a violation of the defendant's Fourth Amendment rights and does not trigger the concerns at issue in *United States v. Dass*, 849 F.2d 414 (9th Cir. 1988) and *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009). While law enforcement must promptly apply for a search warrant when evidence is seized upon probable cause in the absence of the owner's consent, two established exceptions to the warrant requirement distinguish the instant case from *Mitchell* and *Dass*. No warrant is required when the Defendant's computer is searched and seized due to his status as a parolee under the terms of a parole agreement. Additionally, no warrant is required when the Defendant validly consents to a search and seizure of the evidence. For both reasons, no warrant was necessary to review the contents of the Defendant's property, including the Defendant's laptop computer.

When a suspect consents to the search and seizure of evidence, he or she may revoke consent and demand return of the property at any time. Accordingly, a delay in applying for a warrant to search consensually-seized evidence is simply irrelevant in the Fourth Amendment context. *See United States v. Burgess*, 576 F.3d 1078, 1097 (10th Cir. 2009) (holding that when a defendant is unable to identify any prejudice to his defense resulting from law enforcement's delay in obtaining a search warrant, "the only readily apparent concern is that [a defendant will be] temporarily denied access to his property," and that such a deprivation is insufficient to warrant the suppression of properly-seized evidence). Moreover, neither the Fourth Amendment nor Rule 41 of the Federal Rules of Criminal Procedure places any limit on the time frame within which a forensic analysis of a seized computer must be completed.

The defendant erroneously relies upon *Mitchell* and *Dass* for the proposition that the delay in seeking a search warrant after seizing his computer was unreasonable. Neither *Mitchell* nor *Dass* involved parole searches or the defendant's consent to the

1 search of the seized computer. In *Mitchell*, agents effected a probable cause seizure of
2 the defendant's hard drive from his computer based largely upon the defendant's
3 admission that it contained child pornography. *See* 565 F.3d at 1349. The agents waited
4 twenty-one days to seek a warrant to search the hard drive. *See id.* Noting that the
5 reasonableness of delays must be viewed on a "case-by-case basis" and "in light of all the
6 facts and circumstances," the Eleventh Circuit determined that the defendant had a
7 "substantial" possessory interest in the hard drive and that "there was no compelling
8 justification for the delay." *See id.* at 1351. Specifically, the court emphasized the heavy
9 reliance on computers for personal and business uses in discussing the defendant's
10 possessory interest. *See id.* In contrast to the defendant in the present case, the *Mitchell*
11 defendant was not on parole, and therefore not subject to parole searches and seizures,
12 and he did not consent to a search of his computer as defendant Sullivan had on April 10,
13 2010.
14     *Dass* is similarly distinguishable as the seizures in that case were also made upon
15 probable cause in the absence of consent. *See Dass*, 849 F.2d at 415-16. This Court
16 ruled that the agents' delays in obtaining search warrants violated the defendants' Fourth
17 Amendment rights because the agents did not promptly seek judicial validation of their
18 probable cause determinations. *See id.* at 416. Allowing the agents to seek a warrant "at
19 their leisure," the *Dass* court reasoned, "would allow an unlimited period of seizure
20 without judicial intervention." *Id.* at 415-16. While prompt judicial intervention is
21 essential when police seize an item upon probable cause in the absence of the owner's
22 consent, such intervention is not required where, as here, the owner is on parole and must
23 comply with the terms of his parole agreement and/or when the owner validly consents to
24 a search and seizure.
25     In *United States v. Murinko*, the court distinguished Mitchell and Dass, which "both
26 involved warrantless seizures based on probable cause, not consent." *United States v.*
27 *Murinko*, 2010 WL 3521964 at *1 (9th Cir., Sept. 10, 2010) (Attachment 1). In *Murinko*,
28 a search warrant was obtained by law enforcement 72 days after the defendant consented

to a search of his computer. The court concluded that when a defendant consented to the search and seizure of his computer and did not revoke consent, there was no violation of the Fourth Amendment. *See id.*

In the instant case, there is nothing to suggest that defendant was prejudiced by the delay of five days between the defendant's consent and the subsequent issuance of a search warrant. At no time prior to or after giving consent did the defendant ask for the return of his computer or any specific items contained on his computer. Furthermore, there is nothing to suggest that law enforcement acted in bad faith. Suppression based on the 21-day lapse is, therefore, not warranted.

### 2. The since-superseded 2009 opinion in *United States v. Comprehensive Drug Testing* has no bearing on the search warrant issued by the state Superior Court on April 15, 2008.

BPD conducted their searches of the defendant's digital media, including his laptop and camera, pursuant to a state search warrant issued by the Superior Court, Alameda County, on April 15, 2008. The defendant argues that the fruits of these searches should be suppressed because the search warrant did not comply with *United States v. Comprehensive Drug Testing*, 579 F.3d 989 (9th Cir. 2009) (en banc) ("*CDT I*"). Specifically, the defendant argues that the search warrant is invalid because (1) the magistrate did not require the government to waive reliance upon the plain view doctrine or require an independent, third party to review the evidence; (2) the warrant application did not disclose the risk of damage of information; and (3) the warrant lacked a search protocol. Because the defendant's arguments are premised upon outdated caselaw and because *CDT I* was never intended to apply retroactively or to state search warrants, the defendant's *CDT I*-based arguments do not form the basis for suppression of evidence.

*CDT I* has been revised and superseded by *United States v. Comprehensive Drug Testing*, ___F.3d___ (9th Cir. Sept. 13, 2010) (en banc) ("*CDT II*"). The *CDT I* procedures cited by the defendant as lacking in the state search warrant obtained by BPD are missing in the court's opinion in *CDT II*. Instead, that "guidance" that factored so

1   prominently in *CDT I*, is relegated to a non-controlling, concurring opinion by Chief
2   Judge Kozinski in *CDT II*.
3       It is worth noting that the search warrant in the present case was issued over a full
4   year before the Ninth Circuit's opinion in *CDT I* was announced. The language of *CDT I*
5   made clear that the court contemplated prospective application: The procedures described
6   in CDT are "a useful tool for the future," *CDT I*, 579 F.3d at 1007, not standards to be
7   applied retroactively. The opinion emphasizes that point, noting that only "future warrant
8   applications" must forswear plain view, *id.* at 998, and the "wall" protocol is required
9   only "[t]o guard against such unlawful conduct in the future," *id.* at 1000. Furthermore,
10  *CDT I* did not appear to apply to warrants issued by state courts. At the beginning of the
11  opinion, the court announced that it is about to "take the opportunity to guide our district
12  and magistrate judges in the proper administration of search warrants" in the task of
13  "strik[ing] a proper balance" between law enforcement and Fourth Amendment interests.
14  *Id.* at 994. And even for federal judges, the guidance was not intended to be mandatory:
15  at the end of the opinion, the court repeated that the new procedures were "guidance,"
16  writing that magistrates should be "vigilant in observing the guidance we have set out
17  throughout our opinion." *Id.* at 1006. Further underscoring *CDT I's* inapplicability to
18  state courts, *CDT I* did not lay claim to being based on the Fourth Amendment, or any
19  other part of the Constitution. Indeed, the opinion generally fails to cite the Fourth
20  Amendment, cases interpreting it, or other legal authority. Given the revision and
21  superseding of *CDT I* by *CDT II* and the general inapplicability of *CDT I* to a search
22  warrant issued by a state court in 2008, the defendant's suppression request based on
23  *CDT I* should be denied.
24
25
26
27
28

No. CR 09-00167
U.S.'s Opp. Def.'s Mot. Suppress     14

## IV. CONCLUSION

For the reasons stated above, and as may be supplemented by further submission of arguments, evidence, and points and authorities, the government requests that the defendant's Motion to Suppress be denied.

Dated: October 18, 2010                Respectfully submitted,

                                       MELINDA HAAG
                                       United States Attorney


                                       _____/s/_____
                                       ANDREW S. HUANG
                                       Assistant United States Attorney

                                       ALECIA RIEWERTS WOLAK
                                       Trial Attorney