United States of America,        )
                                 )
                    Plaintiff,   )
                                 )
          v.                     )
                                 )        No. CR-09-0167-DLJ
Edward Sullivan,                 )
                                 )        **ORDER**
                    Defendant.   )
_____)

On October 1, 2010 defendant Sullivan filed a motion to suppress evidence from the computer seized from his car.  An evidentiary hearing on this matter was begun on December 3, 2010 and continued on December 14, 2010.  The Court heard argument on the motion on December 15, 2010.  The United States was represented at the hearing by Attorneys Andrew Huang and Alecia Wolak and defendant was represented by Attorneys Ian Loveseth and Matt Springman. Having reviewed the testimony, the papers and having heard oral argument on this matter, the Court finds the following.

**I. BACKGROUND**

The defendant was convicted in California state court of unlawful sex with a minor and prostitution of a minor under 16 years of age.  When the events of this case occurred Sullivan was on parole for those violations.

Because of the nature of his offenses, Defendant was subject to both standard and special conditions of parole. See Attachments 1 and 2 to the Tran Decl.  The standard form Notice and Conditions of Parole included a search condition: "You and your residence and any property under your control may be searched without a warrant by an agent of the Department of

**United States District Court**
For the Northern District of California

Corrections or any law enforcement officer."

The Special Conditions included the following:

• You shall not have contact with females between the ages of 14 and 18 years. "No contact" means exactly that. No contact in any form, whether direct or indirect, personally, by telephone, letter, electronic, computer, or through another person.

• You shall not view, possess or have access to videotapes, films, magazines or photographs depicting any type of sexual activity or sexually oriented material.

• Any computer or mobile telecommunications device under your control, or to which you have access, is subject to search and seizure by your Parole Agent.

• You shall contact your parole agent within 24 hours of any type of Law Enforcement contact (traffic stop, identification check, suspect, witness, etc.).

Tran Decl. at Attach. 2.

On March 17, 2008, The Oakland Police ("OPD") stopped a minor female hereinafter referred to as "D.T." on International Boulevard for suspicion of engaging in prostitution. Defendant was nearby at the time. D.T. was questioned at that time as to whether Sullivan was her pimp. She denied it. The OPD stopped Sullivan, questioned him but did not arrest him for anything at that time.

D.T. was returned to her mother's house in Oakland. Once she was home, D.T. told her mother that Sullivan had pimped and raped her. D.T.'s mother took her to the hospital and D.T. gave a report to the police. Because by D.T.'s account, the abduction had happened in Berkeley, the matter was transferred to the Berkeley police department's jurisdiction.

As already indicated Defendant was on parole. Defendant's

2

**United States District Court**

For the Northern District of California

1    parole agent Nghia Tran testified that on March 24, 2008,

2    D.T.'s mother contacted Parole Agent Sandra Wooden, Tran's

3    supervisor and reported that the defendant had kidnaped, raped

4    and pimped her daughter.  See Id. at ¶ 7.  That day parole

5    agents went to the Bay Breeze Inn where defendant had been

6    living to attempt to arrest Sullivan but he was no longer

7    there.  On March 24, 2008 Supervisor Wooden applied for a

8    Miscellaneous Decision revoking Sullivan's parole effective

9    March 22, 2008 and ordering him returned to prison.  This order

10   was signed on March 25, 2008.

11       Parole agents arrested defendant on March 25, 2008.

12   Incident to the arrest, parole agents conducted a parole search

13   of defendant's car and recovered several items including a

14   laptop computer, a digital camera, a book about pimping, and a

15   cellular telephone.  Tran asserts that he seized these items

16   because he believed they could contain evidence of the alleged

17   parole violations.

18       Defendant argues that it is unclear exactly how Agent Tran

19   learned of Sullivan's detention by the Oakland Police

20   Department and the later involvement of the Berkeley Police

21   Department (BPD). However, Tran testified that prior to

22   defendant's arrest and the seizure of the evidence he was not

23   aware of any parole officer having contact with any other law

24   enforcement agencies regarding the allegation made by D.T.

25   other than those already described.  Tran testified that only

26   after Sullivan had been arrested did he contact the Berkeley

27   Police Department so that he could prepare his Violation

28                                        3

**United States District Court**
For the Northern District of California

1   Report.   On March 25, 2008, Tran filed a Violation report

2   charging Sullivan with 8 different parole violations.

3        On March 26, 2008 D.T. identified Sullivan in a photo

4   array.   On April 10, 2008, Detective Kaplan of the Berkeley

5   Police Department interviewed Sullivan. During the interview,

6   Sullivan stated that there was video footage of D.T. on his

7   computer in which D.T. stated that she was 19. Transcript at

8   13:15-24.   Kaplan asked whether the police could see these

9   videos.   At one point Sullivan suggests that rather than look

10  at the computer, the police should speak with other

11  acquaintances of Sullivan who could corroborate his belief

12  about D.T.'s age.   Ultimately Sullivan agreed that the police

13  could look on his computer.

14        Q: if you got video – I'm sayin', if you got
          video with her sayin' that she's 18, we'll find that,
15        right?

16        A: You..you-

17        Q.  Now if there's other stuff...if there's
          other stuff-
18
          A. (Inaudible) You guys are the lead
19        investigative team and it s'posed to happen in
          Berkeley.  What's-
20
          Q We have the computer.  We just haven't looked
21        at it cuz we ain't got a warrant yet.  Do you mind if
          we look in your computer?
22
          A.  Look in the computer.  I give you consent.
23
24  Transcript of April 10 interview of Edward Sullivan) 36:18-26.

25        Not having a consent form with him, Kaplan hand-wrote a

26  consent form, which Sullivan signed. Ex. E (Consent Form). On

27  April 15, 2008 Kaplan also sought and received a search warrant

28
                              4

to search Sullivan's laptop and camera.

The search of the laptop thereafter produced several videos of D.T., including one video showing D.T. performing oral sex on a male. That video is the basis for the current charges against Sullivan, production of child pornography under 18 U.S.C. 2251 and possession of child pornography under 18 U.S.C. 2252(A)(4).

**II.  DISCUSSION**

Defendant has raised several arguments as to why the seizure and subsequent search of the computer was inappropriate.  Defendant first argues that the parole agent's seizure of Sullivan's computer was warrantless and also was done impermissibly at the behest of another law enforcement agency in circumvention of the Fourth Amendment.  Defendant also argues that since he was already in custody at the time the parole agent seized the computer that this was an impermissible warrantless search.  Defendant then attacks the scope of the search, saying that while Sullivan gave consent to search his computer, that consent was limited only to a search for representations by the victim of her purported age. Finally, defendant asserts that the time delay from the date the parole agent seized his computer until the search of the computer took place was outside the reasonableness standard, and that the search violated computer search protocols established by the Ninth Circuit in the <u>Comprehensive Drug Testing</u> case.

**United States District Court**
For the Northern District of California

A.   Was the Seizure of the Computer by the Parole Agent
Appropriate?

Defendant raises two issues regarding the seizure.  First
he argues that the seizure was unlawful as he alleges that the
parole officer was acting as a "stalking horse" for the
Berkeley police.  Second, he asserts that the parole agent
could not seize the computer as he had already taken Sullivan
into custody and therefore he had no parole-related reason to
seize the computer at that point.  Both of these arguments fail
on the facts developed in the record.

Defendant admits that normally a parole agent has the
authority to conduct a warrantless search of a parolee.  <u>Samson
v. California</u>, 547 U.S. 843, 854 (2006).  Defendant argues that
in his case, however, the parole agent was acting at the behest
of the Berkeley police and therefore his action in seizing the
computer was an unlawful circumvention of the Fourth Amendment
warrant requirement.

In his motion Defendant raised the inference that the
parole agent was working at the behest of the Berkeley police
because the charges in the parole report in part overlap with
those in police report.  However, defendant has presented no
evidence on this point.  In contrast, at the evidentiary
hearing the parole agent testified that prior to the arrest he
had no contact with any police officers in reference to
Sullivan, and that the report in question was written only
after Sullivan had already been arrested.  This evidence was
consistent with the parole agent's declaration, submitted as

**United States District Court**
For the Northern District of California

part of the opposition to the motion.  <u>See</u> Tran Decl at ¶ ¶ 7-12.

Because the evidence does not support defendant's "stalking horse" argument, the Court need not engage in a lengthy analysis of the case law cited by defendant.  The Court merely notes however, that the cases relied on by defendant, including <u>U.S. v. Harper</u>, 928 F.2d 894 (1990) are not applicable to the facts of this case.

Sullivan's second argument is that because Sullivan had already been taken into custody, the parole officer lost authority to conduct a parole search of Sullivan's car. Although the search of the car did not happen at the exact moment of Sullivan's arrest, the testimony demonstrated that the parole officer's search of the car was clearly part of the arrest process.

Sullivan was a parolee subject to search without cause. In this case, however, there was a specific contact information provided to the parole officer giving rise to reasonable suspicion of criminal behavior.  As is always the case under that circumstance there is a concurrent interest by both local law enforcement and the parole authorities.  Also in this case, the record supports the Court's conclusion that the parole agents acted to carry out their own responsibilities to supervise Sullivan. The Court notes that defendant's contact with the minor girl was a violation of his parole in and of itself whether or not any new criminal conduct accompanied that contact.  Therefore, the Court finds that the seizure of the

7

computer was a legal parole search authorized by defendant's conditions of parole and the circumstances of the arrest.

B.   Was Sullivan's Consent to the Search of His Computer Valid?

At some point Sullivan's computer was transferred to the BPD.  Tran's declaration states that the California Department of Corrections and Rehabilitation ("CDCR")does not have the capacity to perform a search of a computer and therefore routinely transfers evidence of that nature to outside agencies to analyze.  The CDCR maintains an interest in the results of the analysis to support parole revocation proceedings.  Here even though Sullivan agreed to a disposition of his parole violation, the CDCR states that Sullivan could have revoked the agreed upon disposition and so evidence regarding his violations would still have been of interest to them.  Tran Decl. at ¶ 15.

While the computer was in the custody of the BPD, BPD officers met with Sullivan for several hours.  During this conversation, Sullivan consented to a search of his computer. He assented to the search verbally and also signed a broadly worded written consent.  See Attachment 1 to the Kaplan Declaration. (Giving the BPD consent to search through "all files, hard drives and all information contained" on the computer "including all drives, internal and external storage devices.")

Sullivan now claims that his consent was invalid because: (1) it followed an unlawful arrest and seizure; and (2) that it

8

**United States District Court**
For the Northern District of California

1    did not cover the comprehensive search conducted by the BPD.

2    As discussed above, there was nothing improper with Defendant's

3    arrest and the seizure of the computer by the parole agents.

4        Sullivan then argues that the BPD told him that the sole

5    purpose of the search of the computer would be to determine

6    whether DT had represented herself to be 18 or older.  Again

7    the facts do not support Sullivan's argument.  During his

8    interview, Sullivan himself suggested that he had video of DT

9    on his computer in which DT represented that she was 18 or

10   older.  Moreover, the transcript of the conversation between

11   Sullivan and the police officers prior to Sullivan granting his

12   consent clearly raised the possibility that the BPD could find

13   more than merely an assertedly exculpatory video. Additionally,

14   the scope of the written consent is broad and includes an

15   addendum specifically enumerating that the search would include

16   "all drives, internal and external hard drives," which addendum

17   Sullivan separately initialed indicating he read that addendum.

18   See Id.

19       Both the transcript of the interview and the written

20   consent indicate that a reasonable person in Sullivan's

21   position would have understood that he was consenting to a

22   broad search of his computer.  See United States v. Gutierrez-

23   Mederos, 965 F.2d 800, 803 (9th Cir. 1992)(Citing, Florida v.

24   Jimeno, 500 U.S. 248 (1991)(in measuring the limits of a

25   defendant's consent, the court must assess what a reasonable

26   person would have understood by the exchange between himself

27   and the police officer).

28

**United States District Court**
For the Northern District of California

 1
 2
 3
 4

The Court finds that Sullivan's consent was sufficiently broad to cover the search of the computer conducted by the BPD. Moreover, the search was conducted pursuant to a validly issued search warrant.

 5

**C.  Did the Search Meet the Warrant Requirements or Were There Constitutional Errors in the Search Itself?**

 6
 7
 8
 9
10
11
12

Defendant makes two additional arguments about the search of his computer.  First he alleges that the search was impermissible because it came 21 days after his arrest. Sullivan then argues that the warrant used to search Sullivan's computer did not meet Fourth Amendment standards as articulated in the Ninth Circuit's <u>Comprehensive Drug Testing</u> case, 579 F.3d 989, 998 (9th Cir. 2009).

13

**1.   <u>The 21 day delay</u>**

14
15
16
17
18
19
20
21
22
23
24

Defendant argues that the 21 day delay between the seizure of his laptop computer and the receipt of the warrant to search the computer was unreasonable under <u>United States v. Dass</u>, 849 F.2d 414 (9th Cir. 1988).  In <u>Dass</u>, Hawaiian law enforcement authorities began an effort to catch marijuana growers on the Island of Hawaii who used the mail to distribute their crops. In this operation, agents collected suspicious packages at certain post offices on the Island of Hawaii for dog sniffs. If the dog sniff suggested the presence of marijuana, the agents would detain the packages until a magistrate issued a search warrant.

25
26
27

The agents detained packages mailed by the four appellees. Agents detained appellees' packages for periods from seven to

28

twenty-three days before they secured search warrants. Once they executed the search warrants, the agents found marijuana in every package. In the subsequent prosecutions, the district court granted suppression motions because it found the seizures to be unreasonable, a position the Ninth Circuit upheld.

The government argues that <u>Dass</u> does not apply both because the warrantless seizure of the computer was appropriately made by parole officers and also that defendant consented to the search.  Moreover, as Sullivan was in custody there was no evidence that access to his computer was prejudicial, nor is there evidence that the government showed bad faith in the delay. The Court reaffirms that the seizure and search of the computer was lawful and finds that the facts of <u>Dass</u> are inapplicable to this case.  There was no improper and prejudicial delay in the search of the computer here.

2.   Does the Comprehensive Drug Testing Case Demonstrate That the Search Was Unlawful?

Defendant cites the Ninth Circuit opinion in <u>United States v. Comprehensive Drug Testing</u>, 579 F.3d 989, 998 (9th Cir. 2009)("CDT I") to raise problems with the search of his computer.  The Court finds that Defendant's argument fails on several grounds.

The search of defendant's computer took place pursuant to a warrant issued in April of 2008.  The <u>Comprehensive Drug Testing</u> case came down after the warrant was issued and there is no evidence that the <u>Comprehensive Drug Testing</u> case was meant to apply retroactively. <u>Id</u>. at 1007(the procedures

11

United States District Court

For the Northern District of California

1  outlined are a "useful tool for the future.").

2      Second, the particular <u>Comprehensive Drug Testing</u> case

3  relied on by defendant was revised and superseded by an *en banc*

4  decision in 2010, which decision does not include all of the

5  procedures defendant asserts here to be required.  <u>United</u>

6  <u>States v. Comprehensive Drug Testing</u>,  2010 WL 3529247 __ (9th

7  Cir. Sept 13, 2010, *en banc*)(CDT II).  Moreover, the holding of

8  CDT II does not readily apply here.  In the <u>Comprehensive Drug</u>

9  <u>Testing</u> cases the issue was whether where large amounts of data

10 were being searched that included both the ten persons named on

11 the warrant but also numerous other persons not the subject of

12 investigation at that point, could the government seize

13 wholesale data, sift through it and essentially use the data as

14 a fishing expedition for potential future warrants.

15     Even if the CDT cases were intended to be applied

16 retroactively and to state court warrants, the facts simply do

17 not apply here.  All of the information on the computer

18 belonged to Sullivan who was the subject of the warrant- no

19 potentially innocent third parties were inadvertently swept up

20 in the search of Sullivan's computer.  Thus defendant's

21 reliance on CDT is misplaced both as to time and as to scope.

22 The Court finds no improprieties in the manner of the computer

23 search.

24

25 III.  **CONCLUSION**

26     For all of the reasons stated above, the Court finds that

27 the seizure and search of defendant's computer was lawful.

28
                                  12

Therefore, Defendant's Motion to Suppress is DENIED.


        IT IS SO ORDERED.

Dated: February 1, 2011

_____
D. Lowell Jensen
United States District Judge

United States District Court
For the Northern District of California