United States of America,    )
                              )
            Plaintiff,        )
                              )
       v.                     )
                              )   No. CR-09-0167-DLJ
Edward Lee Sullivan,          )
                              )   **Findings of Fact and**
                              )   **Conclusions of Law**
            Defendant.        )
_____)

A bench trial in this matter was held over the course of 13 days in December 2010, January and February 2011. The United States was represented at the trial by Attorneys Andrew Huang, Alecia Wolak, and Maureen Bessette. At his request, Defendant was permitted to represent himself at the trial. Defendant was also represented at trial by co-counsel, Attorneys Ian Loveseth and Matt Springman. Having heard all of the evidence presented in the case, the Court makes the following findings of fact and conclusions of law.

## I.  Findings of Fact

1. Defendant Edward Lee Sullivan ("Sullivan")is charged in Count One of the Indictment with production of a visual image of a minor child engaged in sexually explicit conduct in violation of 18 U.S.C. § 2251(a).  He is charged in Count Two with the possession of child pornography in violation of 18 U.S.C. § 2252A(4).

2. In March 2008 Sullivan lived in Oakland.  He was on parole following his conviction in 2002 for pimping and for sexual conduct with a 14 year old girl.  He had been on parole since November 2007.

3. The parole conditions for Sullivan included a

prohibition on any contact whatsoever with girls under 18.

4. In the late morning of March 17, 2008 an Oakland Police Officer stopped and questioned a young female who was in an area on International Blvd. which was frequented by prostitutes. Based on her appearance, her conduct and the area, the police officer suspected the girl of being a prostitute.

5. The defendant was also in the same area. He was detained and the officer asked the girl if this man was her pimp. The girl said that he was not and the defendant was released.

6. The police officer found that there was a Missing Persons Report for the girl and took her to her home in Berkeley. Thereafter, ongoing investigation of the incident was transferred to the Berkeley Police Department (BPD).

7. This girl is the victim in this case. The true name of the girl has not been used throughout the proceedings. She has been identified with the initials "D.T." or by use of the pseudonym, Erika Doe.

8. Erika Doe was a seventh grade student at Willard Middle School and lived with her mother in Berkeley.

9. On March 4, 2008, Erika's mother reported to BPD that Erika was a missing person. Erika did not return home or attend school from that date through March 17, 2008. School records show that Erika attended school each day in 2008 until March 4, 2008. The records show that she was absent each day thereafter until after March 17th.

10. The Defendant and Erika first met on March 4, 2008 sometime after school when Erika was on the street in the company of some of her friends. After defendant and Erika talked, Erika left with the defendant and they drove off in his car.

11. Erika was with the defendant from that time until March 17th when she was stopped by the OPD.

12. On the first night that Erika was with the Defendant he took her to the house of Kimberlea Reid (now Kimberlea Evans), a friend of his who lived in Vacaville. Reid was aware that Sullivan was on parole and that he was not to have contact with minor girls. Reid asked Erika how old she was and Erika stated that she was 18. At trial, Erika said that she had not been asked her age by Sullivan, but that he had told her to tell other persons that she was 18. Reid asked Erika for her identification and when Erika did not produce a license or other identification, Reid told Sullivan that she did not want him to bring Erika to her house unless she had a license.

13. The Defendant provided Erika with new clothing, which was more adult and sophisticated than the clothes she wore when they met. He also had her hair redone by having it straightened with extensions added to her natural hair.

14. On March 9, 2008 Defendant made several videos of Erika Doe. In some she is wearing the new clothes provided by Sullivan. The audio portion of these videos consists of Sullivan talking to and questioning Erika. In some, the subject matter discussed was prostitution. Sullivan explained

3

at trial that he was in the business of producing documentaries and that he intended to make a documentary that would show how street prostitution was actually carried out.  He further stated that Erika was to serve as his employee and that he and Erika were playing roles in the videos which were being made for the documentary.

15.   The first video of Erika on the defendant's camera was identified on the camera as 100_0039.mov.  Erika is wearing a green track suit – different clothing than she was wearing when she first met the Defendant.  The video does not have a date, but it must have been taken on or before March 6, 2008 as the next still shot with a sequential number on the camera, 100_0043.jpg, does contain a date and was taken on March 6, 2008,

16.   After defendant had Erika's hair styled and provided her with different clothing of his choosing, Defendant took more videos of Erika as well as still photographs of her in various poses.  Defendant uploaded one of these photographs onto an adult website, "Fungirlsplay" with an account created on his computer, in his name and with his e-mail address.  The material submitted to the website does not use her true name, includes a false date of birth which shows that she is 18, and includes statements purporting to describe her sexual conduct.

17.  A video, 100_0064.mov., was also made on March 9, 2008.  This video is the visual depiction involved in this case.  It shows Erika Doe performing oral copulation of the penis of a man ("the oral sex video").  The camera is being

4

1  held in the area of a man's chest and aimed toward his feet.
2  Erika Doe is positioned between the man's legs facing the
3  camera.  Erika Doe's face is clearly visible, the face of the
4  man is not.  During the video a man's voice is heard, directing
5  and describing the activities that are taking place.  The only
6  other sounds in the video are the voice of Erika Doe and a TV
7  playing in the room. Along with the other videos shot at and
8  about the same time, this video was taken at the home of
9  Kimberlea Reid in Vacaville.

10     18.  At trial, Erika Doe stated that the video was shot by
11 the Defendant, narrated by the Defendant, and that he is the
12 man who is seen in the video.

13     19.  At trial the Defendant stated that he and Erika had
14 gone to Reid's house in Vacaville.  He further stated that at
15 that location they met two other persons – a woman named Rose
16 and a man named E.K. Defendant stated that these two persons
17 were working with him on the documentary.  Defendant stated
18 that they consumed marijuana, methamphetamine and alcohol
19 during the afternoon.  He further stated that he and Rose had
20 gone to one of the bedrooms to have sex.  At that point, E.K.
21 and Erika had come into the room and had begun sexual contact.
22 Defendant stated that Erika handed the camera to E.K. as she
23 began to have sex with E.K., and that E.K. then asked the
24 defendant to narrate, as E.K. filmed the sexual encounter.
25 Defendant stated that although he was lying down on a lounge
26 chair at least several feet away from the bed where the sex act
27 was happening, that he could lean his head and see what was

5

happening and so he could provide narration.  At the end of the audio portion, the defendant is recorded on the camera as saying that this was a 7 minute and 40 second film.  The camera display shows that the time of the video and the defendant's statement on the video is an accurate statement.  Defendant insists that he did not know this from the camera display, as he was not holding the camera, but that he was wearing a stop watch and that he was able to independently determine the time that E.K. was holding the camera.

20.  After the oral sex video was completed, the Defendant used the camera to record and narrate two other videos of Erika.  In one of the videos Erika is naked from the waist up.  In the other video Defendant asks Erika if she wants to be a porn star.

21.  At trial, the only witnesses who appeared and testified as to the oral sex incident were the Defendant and Erika Doe.  The Court heard the testimony, and finds that the description of the incident by the defendant is not credible.

22.  On March 25, 2008, the defendant was arrested in Oakland by State Parole Agents, after his parole had been revoked.  The revocation and arrest were based on a report made by the girl's mother regarding defendant's contact with her 14 year old daughter.

23.  At the time of his arrest, the Defendant was found to be in possession of a camera and a laptop computer.

24.  The camera was a Kodak EasyShare C613 zoom camera.  The stamp and the serial number establish that the camera was

6

manufactured in China. The defendant bought the camera, after it had been exported to the United States, at a Wal-Mart store in Fairfield, California.

25. After his arrest, Berkeley Police spoke to the Defendant. They explained to defendant that they were looking for evidence regarding the age of the girl. In that conversation the BPD obtained Sullivan's permission to search the camera and the computer. In addition, BPD obtained a search warrant for a search of the contents of the camera and the computer.

26. After forensic examination it was found that the camera had been used to take a number of still photographs and videos of Erika Doe. Forensic examination of the computer established that several of these photographs had also been downloaded onto the computer. Each still photograph contains a sequential number assigned by the camera when the picture is taken. The camera also records the time and date the still photo was taken. When any such still picture is downloaded, the computer records the time and date both that the photo was taken and the time and date it was downloaded. The camera does not record the time and date when a video is taken, but videos are still numbered sequentially in order along with the still photos, so the approximate date of a video can be ascertained in relation to the date of still photos taken before and after.

27. The oral sex video was found to be on both the camera and the computer.

28. The video establishes the existence of a visual

depiction of Erika Doe engaged in sexually explicit conduct with a man whose face is not visible.

29.  The oral sex video was uploaded to defendant's computer on March 20, 2008 at the same time that other videos taken by defendant were uploaded to the computer.

30.  Erika Doe was 14 years old at the time the video was made. Her age was established by the testimony of her mother and father, and by her birth certificate showing that she was born in November 1993.

31.  At the trial, the defendant testified that he had first met Erika Doe on March 7th, that he had only talked to her briefly, for a "hot second" as he described it, and that she did not go with him. He also testified at the trial that in this first brief meeting on March 7, that Erika showed him a state-issued ID card with a date of birth showing that she was 18 years of age.

32.  He also said he met her again on March 8, and that on March 8 she went with him for the first time. He further stated that when he saw her again on March 8 she told him that the night before she had met a man named Dre who was her pimp. She also told him that Dre was angry with her about her contact with the Defendant, and that Dre had abused her and taken some of her belongings, including the ID card.

33.  There were two occasions where, in the normal course of events, the defendant would have told other parties about the missing ID card but he did not. First, when the defendant first brought Erika to his friend Kimberlea's house. Kimberlea

8

questioned the age of the girl and particularly noted that she did not have a driver's license. The defendant did not tell his friend that he had seen her state-issued ID showing that she was 18. Second, when the Defendant was questioned by the Berkeley police there was a lengthy discussion about the fact that the police would be looking into the issue of the girl's age. The Defendant told them that the videos they wanted to see would show her telling him she was 18, and that they also should question the people she had met and then the police would learn that she was 18. He did not tell the police that she had shown him her state-issued ID with her date of birth indicating that she was 18 years of age.

34. In the context of those circumstances, the Court finds the Defendant's failure to tell the police about her ID under the circumstances then in existence, virtually compels a conclusion that the defendant's statement about seeing an ID card in Erika's possession is not true. There was no evidence at the trial that the defendant or Erika had attempted to replace the stolen ID. There was no documentary evidence introduced that any such card had ever existed. The Court concludes that defendant's statements about the ID card are not credible.

35. Defendant's testimony about the dates defendant first met Erika is also not correct. Her mother reported her missing on the 4th of March. In an audio portion on one of the videos taken on March 9, Erika states that she has been with Defendant for about 6 days. Also the video Defendant took of Erika in

the green track suit, video 100_0039.mov, must have been taken before 100_00.40.jpg, which is a still photo, and on which photo the camera recorded the date it was taken as March 6, 2008. Therefore he could not have met her for the first time on March 7th as he testified.

36.   During the time Erika was with Sullivan it is clear that he was the dominating force in her life. She did not return to her home, school or her family. What she ate, where she stayed, how she dressed, her physical appearance, where she went, what she did and who she met were all directed by Sullivan. The Defendant is a large man, about six foot five and some 250 pounds, who is in his forties. Erika said she was afraid of him. In one of the videos, 100_0043.mov, there is a discussion of a past event where Erika tried to leave the defendant and asks her in the video whether she had to be "checked" or punished by him and she recounts that this was the case.

37.   On March 17, Erika states that after the Defendant took her to International Blvd, when she saw the Oakland Police officer she realized that this would be an opportunity for her to leave the Defendant, and that she made sure her presence was known to the officer so that she could leave Sullivan.

38.   When Erika was returned home by the OPD on March 17th, she told her family and the police that the defendant had kidnaped her at gun point and that she had engaged in sex as a prostitute for the defendant. At trial she admitted that these were lies. She stated at trial that he did not have a gun and

10

that she had not performed any sexual acts as a prostitute. She stated that she had told these false stories because she was afraid of the reaction of her father if he found that she had not been forced to go with the Defendant. The testimony of Erika as to what happened with the Defendant must be assessed in light of that conduct.

## II. Conclusions of Law

### A. The Production of Pornography Count

1. On Count One of the Indictment for Production of Child Pornography in violation of 18 U.S.C. § 2251(a), in order for the defendant to be found guilty, the government must prove each of the following elements beyond a reasonable doubt:

    a. At the time of the production, Erika Doe was under the age of eighteen years;

    b. the defendant employed, used, persuaded, or coerced Erika Doe to take part in sexually explicit conduct for the purpose of producing a visual depiction of such conduct; and

    c. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce.

2. Knowledge of the age of the minor victim is not an element of the offense. United States v. United States District Court, 858 F.2d 534 (9th Cir.1988). See also United States v. X-Citement Video, Inc., 513 U.S. 64, 76 n. 5 (1994) ("[P]roducers may be convicted under § 2251(a) without proof they had knowledge of age . . .") (dicta).

11

3. According to the testimony of her parents and also as shown by her birth certificate, at the time of the production of the video, Erika Doe was 14 years old. When the oral sex video was made, Erika Doe was a minor.

4. When Erika Doe was with the defendant, he controlled all aspects of her life. He chose her clothing, and hairstyles, provided her with any food she ate, and had her participate in a series of videos. The oral sex video was one of these videos. Erika participated in the video at defendant's direction. Erika Doe was at the location where the video was produced because defendant brought her there. She participated in the making of videos at his direction. The camera used to make all of these videos was his camera. In the oral sex video in particular it is his voice on the video. The defendant took possession of the camera and the video after the video was recorded. Even if the Court were to credit defendant's version of the facts – that E.K. was the person holding the camera, defendant is still guilty of this charge. Liability for crime can be established based on either direct or indirect conduct. It is clear that the defendant either made the video himself or aided and abetted another in the making of the video. As already stated, the Court does not credit defendant's version of the facts and finds that he was the person operating the camera and was pictured in the oral sex video.

5. The defendant employed, used, persuaded, induced, enticed, or coerced Erika to take part in sexually explicit conduct for the purpose of producing a visual depiction of such

conduct.

6. The camera used to take the video was a Kodak EasyShare C613 zoom camera. Both the stamp on the camera and the serial number on the camera demonstrated that this particular camera had been manufactured in China. The camera was exported from China to the United States. Defendant purchased the camera at the Wal-Mart in Fairfield, California. The visual depiction was produced using materials that had been mailed, shipped, or transported across state lines or in foreign commerce.

7. Pursuant to a narrow exception created by case law in United States v. Kantor, 858 F.2d 534, 538 (9th Cir. 1988), a defendant in a production of child pornography case is permitted to mount as an affirmative defense that he did not know, or could not reasonably have learned the victim's age. These are separate matters: the subjective state of mind of the defendant and the circumstances which determine the objective issue of whether or not the true age could be determined by a reasonable inquiry. The defendant must prove both. The burden of going forward with evidence on these issues as well as the burden of proving the existence of facts which establish the defense by clear and convincing evidence is squarely on the defendant, not the government.

8. The physical appearance of Erika Doe at the time of these events can be seen in the screen shot of Erika Doe on the video 100_0039.mov. She is obviously an adolescent person.

9. If it was necessary to determine her true age, it would not be reasonable to conclude from her appearance alone that she was in fact 18 years of age. In ordinary

circumstances it is not necessary to determine a person's true age. Defendant's circumstances, however are not ordinary. Defendant had been was previously convicted of the sexual abuse of a 14 year old girl. Additionally, his conditions of parole at the time he met Erika strictly prohibited contact of any kind with females under the age of 18. Nevertheless, defendant adduced no evidence that he took any of the steps available to him to ascertain her true age. Given the potential consequences to defendant that interacting with Erika could be a violation of his parole, his affirmative failure to take steps to ascertain her age demonstrates consciousness of guilt.

10. The Court finds that Defendant did knowingly employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, and that he did produce such a visual depiction and that therefore he is guilty of a violation of 18 U.S.C. § 2251(a).

11. The Court finds that Defendant did not meet his burden of persuasion by clear and convincing evidence on the affirmative defense that he did not or could not reasonably have ascertained the victim's age.

B.  The Possession of Pornography Count

12. On the count of possession of child pornography in violation of 18 U.S.C. § 2252A(4), the government must prove the following beyond a reasonable doubt:

  a.  The defendant knowingly possessed a matter that the defendant knew contained a visual depiction of a minor engaged

14

in sexually explicit conduct;

    b.   The defendant knew the visual depiction contained in the matter showed a minor engaged in sexually explicit conduct;

    c.   The defendant knew that production of such a visual depiction involved use of a minor in sexually explicit conduct; and

    d.   The visual depiction had been produced using material that had been mailed, shipped, or transported in interstate or foreign commerce.

    13.   Defendant made the oral sex video and downloaded it to his computer. He knew that the oral sex video was on his camera and on his computer.

    14.   The defendant had produced the video and therefore he knew that the visual depiction was one of sexually explicit conduct.

    15.   As to the issue of age, the totality of the evidence set out above, including the physical appearance of the victim, defendant's intentional failure to ascertain the victim's true age, along with his instructions to her to tell others that she was 18, his prior experience with a 14 year old in a very similar situation all establish that defendant knew the victim was a minor. Therefore, the defendant knew the visual depiction contained in the matter showed a minor engaged in sexually explicit conduct;

    15.   For the reasons enumerated above, the defendant knew that production of such a visual depiction involved use of a minor in sexually explicit conduct; and

    16.   Both the camera and the laptop computer had been

manufactured in China and had been shipped via interstate or foreign commerce to the United States.  The visual depiction had been produced using material that had been mailed, shipped, or transported in interstate or foreign commerce.

17.  The Court finds that the Defendant knowingly and intentionally possessed a matter that the defendant knew contained a visual depiction of a minor engaged in sexually explicit conduct and therefore is guilty of a violation of Title 18 U.S.C. 2252(a)(4)(B).

Dated: April 5, 2011

D. Lowell Jensen
United States District Judge